[Cite as *State v. Gooch*, 2025-Ohio-4595.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 23AP-424 |
| v. | : | (M.C. No. 2022 TRC 144961) |
| Tyran D. Gooch, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 23AP-439 |
| v. | : | (M.C. No. 2023 TRC 115175) |
| Tyran D. Gooch, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on October 2, 2025

**On brief:** *Mitchell A. Williams*, Franklin County Public Defender, and *Timothy E. Pierce*, for appellant. **Argued:** *Timothy E. Pierce.*

**On brief:** *Bradley S. Nicodemus*, Whitehall City Attorney, for appellee. **Argued:** *Bradley S. Nicodemus.*

APPEAL from the Franklin County Municipal Court

BOGGS, J.

{¶ 1} Defendant-appellant, Tyran D. Gooch, appeals the judgments of the Franklin County Municipal Court in two criminal traffic cases that were tried together to a single jury. In M.C. case No. 2022 TRC 144961, the jury found Gooch guilty of operating a vehicle while under the influence of alcohol and/or drugs of abuse ("OVI (impaired)") in violation of R.C. 4511.19(A)(1)(a); and the trial court found Gooch guilty of failing to obey a traffic

control device in violation of R.C. 4511.12 and failure to wear a safety belt in violation of R.C. 4513.263. In M.C. case No. 2023 TRC 115175, the jury found Gooch guilty of operating a motor vehicle with a concentration by weight of .238 of one gram or more of alcohol per 100 milliliters of urine ("OVI (per se)") in violation of R.C. 4511.19(A)(1)(i). The trial court merged the OVI offenses and imposed a sentence on the OVI (per se) offense in case No. 2023 TRC 115175. In case No. 2022 TRC 144961, the trial court imposed sentences only for the traffic control device and safety belt offenses, and not for the OVI (impaired) offense. For the following reasons, we affirm the trial court's judgments.

## I.  FACTS AND PROCEDURAL BACKGROUND

{¶ 2}  Gooch was charged in case No. 2022 TRC 144961 with OVI (impaired), disobeying a traffic control device, and failure to wear a safety belt. Based on the results of a urine test, Gooch was subsequently charged in case No. 2023 TRC 115175 with OVI (per se). All the charges arose out of a three-vehicle automobile accident that occurred around 2:00 a.m. on November 10, 2022, at the intersection of East Main Street and South Hamilton Road in Whitehall, Ohio. Gooch pled not guilty to the charges, and a single trial commenced on May 30, 2023.

{¶ 3}  As part of its case, the prosecution called three witnesses, including two Whitehall police officers, Bruce Stephen and Noah Fullerton, whose testimony we discuss below.[1]

{¶ 4}  Officer Stephen responded to the scene of the underlying collision. Based on witness statements, he determined that a Ford Fusion, driven by Tiffany Logan, and a pickup truck, driven by Stanley Hale, had been stopped at a red traffic light on Hamilton Road, at the intersection with East Main Street. The Ford Fusion was heading northbound, and the pickup truck was heading southbound. When the traffic light changed, those vehicles entered the intersection while Gooch was driving westbound on East Main Street. Gooch did not stop for the red light, and his vehicle struck the Ford Fusion, causing it to spin and strike the pickup truck. Gooch's vehicle struck a pole and came to rest on the northwest corner of the intersection.

{¶ 5}  Officer Stephen did not have a thorough conversation with Gooch at the accident scene, but he did observe what looked like vomit on Gooch's left shoulder. Officer

---

[1] The prosecution's third witness was the driver of one of the other vehicles involved in the accident. Her testimony is not relevant to the issues before this court on appeal.

Stephen also observed vomit inside Gooch's vehicle and on the outside of the vehicle's driver-side doors. He testified there was a strong odor of alcoholic beverages coming from inside Gooch's vehicle and from the vomit. Officer Stephen testified the streaks of vomit on the rear driver-side door suggested that someone had vomited out the window while the vehicle was moving.

{¶ 6} Officer Fullerton had more personal interaction with Gooch at the scene, because a part of his duties was to question Gooch about a potential OVI charge. Like Officer Stephen, Officer Fullerton stated it looked like vomit on the outside of Gooch's vehicle had "splashed back out of the window," possibly while the car was moving, given "the direction of the splash." (Tr. Vol. I at 147.) Officer Fullerton did not notice an odor of alcoholic beverages coming from the vomit, but he did notice an odor of alcoholic beverages coming from Gooch's person when he placed Gooch in the back of his police cruiser. Gooch denied having consumed alcohol, and he tried to avoid answering Officer Fullerton's repeated questions about his alcohol consumption. Gooch told Officer Fullerton he had "a very important job with a [commercial driver's] license." *Id.* at 152.

{¶ 7} Officer Fullerton testified Gooch was disoriented as to the direction he had been traveling, and that he had "thick and slurred" speech and was "lethargic and sluggish." (Tr. at 151.) Based on those observations, Officer Fullerton administered several standardized field sobriety tests, including the walk-and-turn test and the one-leg-stand test, which he determined that Gooch failed. After administering the field sobriety tests, Officer Fullerton returned Gooch to the back of the cruiser, because "we had determined he was under arrest for the OVI." *Id.* at 162. He did not place Gooch in handcuffs because Gooch was complaining about chest pain; Gooch nevertheless refused the officers' offers to seek medical attention. Officer Fullerton's supervisor, Lieutenant Grebb, read Gooch the contents of the Bureau of Motor Vehicles ("BMV") form 2255, which advised Gooch of the consequences of refusing a chemical test, while Officer Fullerton completed the BMV 2255 form with information about Gooch and his arrest. Officer Fullerton then transported Gooch to the Whitehall police station.

{¶ 8} When they arrived at the police station, Officer Fullerton noticed that Gooch continued to get more unsteady and sluggish. In the station slate room, Gooch twice submitted to a breath test administered by Officer Fullerton, but both tests resulted in invalid samples, "because [Gooch] did not blow sufficiently into the hose." (Tr. at 173-174.)

Officer Fullerton stated that, "because of [Gooch's] sluggish, disoriented state, he ended up sucking in on the hose and giving an invalid sample." *Id.* at 174. He testified that when a person sucks in on a breathalyzer machine, it automatically results in an invalid sample.

{¶ 9} After the second invalid breathalyzer result, Officer Fullerton testified he asked Gooch for a urine sample and that Gooch agreed to provide one. Describing the process for obtaining the urine sample and submitting it for testing, Officer Fullerton stated he used a kit provided by the Ohio State Highway Patrol lab: "[W]e walk him down the hallway and have him provide a urine sample in that vial; seal it up. He watches me seal it up. We fill out the form, piece it together, seal it with the tampering tape and mail it off." (Tr. at 182.) Before he was released from custody, Gooch signed and was given a copy of the BMV 2255 form, which indicated that he had submitted to a urine test. Lab results revealed .243 grams by weight of alcohol per 100 milliliters of urine in the submitted sample. When asked whether he believed Gooch was impaired at the time of the accident, Officer Fullerton responded, "Very much so." *Id.* at 192.

{¶ 10} After the prosecution rested its case, Gooch testified on his own behalf. He stated that he was driving home from a friend's house in Pickerington at the time of the accident. While driving westbound on East Main Street, about 15 minutes from his friend's house, Gooch ran the red light, struck another vehicle in the intersection, and collided with a pole. He was not wearing his safety belt.

{¶ 11} Gooch claimed he had not consumed any alcohol that night, and he admitted he "kind of got annoyed" when Officer Fullerton kept asking him about it, "so I was just -- I wasn't even trying to talk about it." (Tr. Vol. II at 234.) Gooch testified he vomited immediately after the accident, both inside the vehicle and out the window, but he denied vomiting while driving. Gooch fell while exiting his vehicle. He claimed his chest hurt and that he was "kind of dizzy." *Id.* at 232. He explained, "My whole body was in shock because I . . . knocked the wind out [of] myself." *Id.* at 233. Gooch approached the driver of the Ford Fusion to make sure she was okay.

{¶ 12} Gooch was in an ambulance when the police arrived at the scene. He did not receive medication, and he declined when asked whether he wanted to go to the hospital. Gooch testified he did not want to go to the hospital because he had six-day-old twins, and he did not want the twins' mother taking them out in the cold to retrieve him.

{¶ 13} After Gooch exited the ambulance, he spoke with Officer Fullerton, who placed him in the back of a police cruiser. Gooch told the officer he had not consumed any alcohol. He also told the officer his chest hurt and that he was having trouble standing, but he rejected the officer's offer to take him to the hospital. Gooch completed the field-sobriety tests administered by Officer Fullerton, but he claims his injuries inhibited his performance.

{¶ 14} Gooch claims that, when he was asked to take a breathalyzer test at the police station, he remained "short-winded, in pain, still in shock," and that he was having trouble breathing and standing up straight. (Tr. at 237.) He admits that his two attempts at the breathalyzer test yielded invalid results.

{¶ 15} Gooch does not dispute that he signed a BMV 2255 form that indicated he had submitted a urine sample or that he received copies of a ticket and the BMV 2255 form before being released from custody. Like the BMV 2255 form, the ticket also indicated that Gooch had submitted to a urine test. In court, however, Gooch stated he did not recall anyone talking to him about a urine test and did not recall providing a urine sample. He claims he did not review the paperwork he signed at the police station. He stated, "I was just writing my signature to leave." (Tr. at 249.)

{¶ 16} The jury returned guilty verdicts on both OVI offenses, and the trial court found Gooch guilty of disobeying a traffic control device and failure to wear a safety belt. After merging the OVI offenses, the trial court sentenced Gooch for OVI (per se), disobeying a traffic control device, and failure to wear a safety belt.

{¶ 17} Gooch filed a timely notice of appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 18} Gooch asserts four assignments of error for this court's review:

> [1.] The lower court's jury instructions deprived Appellant of his right to a unanimous jury verdict in violation of the Fifth, Sixth, and Fourteenth Amendments [to] the United States Constitution [and] Article I, Sections 5, 10, and 16 of the Ohio Constitution, R.C. 2945.10, R.C. 2945.11, Crim.R. 31(A), [and] Crim.R. 52(B).
>
> [2.] The lower court plainly erred when it failed to instruct the jury on the definition of "under the influence of alcohol" in violation of Appellant's rights under the Fifth, Sixth, and Fourteenth Amendments [to] the United States Constitution

[and] Article I, Sections 5, 10, and 16 of the Ohio Constitution, R.C. 2945.10, R.C. 2945.11, Crim.R. 31(A), and Crim.R. 52(B).

[3.] The jury's verdict of guilty regarding the two OVI charges ran against the manifest weight of the evidence.

[4.] The jury's verdict of guilty regarding the two OVI charges was based on insufficient evidence.

## III. ANALYSIS

### A. Assignments of Error Nos. 1 and 2

{¶ 19} Gooch's first two assignments of error challenge the trial court's jury instructions on the OVI offenses, which we review here. As to the OVI (impaired) charge, the trial court instructed:

> The defendant is charged with operating a vehicle while under the influence of alcohol or drugs of abuse. But before you can find the defendant guilty, you must find beyond a reasonable doubt that on the 10th day of November, 2022, and in the County of Franklin, City of Whitehall, Ohio, the defendant operated a vehicle while under the influence of alcohol.

(Tr. at 273.) The trial court defined for the jury the terms "operate," "vehicle," "alcohol," and "drugs of abuse," but it did not define "under the influence." *Id*. at 274. It explained:

> Evidence of the test administered to the defendant may only be considered as evidence indicating whether the defendant had or had not consumed some alcohol. You may not, on the basis of the test alone, conclude or infer that the defendant was or was not under the influence of alcohol.
>
> Evidence of a urine test administered to the defendant may be considered along with all other evidence in determining whether the defendant was or was not under the influence of alcohol or drugs of abuse with regards to this count.

*Id*. at 274-275. It concluded:

> If you find the State proved beyond a reasonable doubt all essential elements of the offense of operating under the influence of alcohol and/or drugs of abuse, your verdict must be guilty according to your findings.
>
> If you find the State failed to prove beyond a reasonable doubt any one of essential elements of the offense of operating under the influence of alcohol and/or drugs of abuse, then your verdict must be not guilty according to your findings.

*Id.* at 275.

{¶ 20} As to the OVI (per se) offense, the trial court instructed:

The State has accused the defendant of operating a motor vehicle with a prohibited alcohol concentration in his urine. A person commits the offense of operating a motor vehicle with prohibited concentration of alcohol in his urine while he has a concentration of [.238] of one gram or more by weight of alcohol per [100] milliliters of the defendant's urine.

Before you can find the defendant guilty of operating a motor vehicle with a prohibited concentration of alcohol, the State's evidence must convince you beyond a reasonable doubt of each element of the offense.

The elements are that the offense took place in Franklin County, Ohio; defendant was operating a motor vehicle; and the defendant had a concentration of .238 of one gram or more by weight of alcohol per [100] milliliters of his urine. The parties have stipulated to a urine sample test result of .243.

If you find that the State proved beyond a reasonable doubt all essential elements of the offense of operating under the influence of alcohol per se, your verdict must be guilty according to your findings.

If you find the State failed to prove beyond a reasonable doubt all essential elements of the offense of operating under the influence of alcohol and/or drugs of abuse per se, then your verdict must be not guilty according to your findings.

*Id.* at 275-276.

{¶ 21} After the trial court orally instructed the jury, the prosecutor requested the trial court delete from the written jury instructions the mention and definition of "drugs of abuse" with respect to the OVI (impaired) charge and the reference to "drugs of abuse" in the final paragraph of the instruction regarding the OVI (per se) charge. The trial court agreed, and the bailiff stated he would print the revised written instructions.[2] The trial court neither informed the jury of those changes, nor issued revised oral jury instructions.

---

[2] The written jury instructions filed in case No. 2023 TRC 144961 differ from the written jury instructions filed in case No. 2023 TRC 115175. The written instructions filed in case No. 2023 TRC 115175 seem to include at least some of the alterations requested on the record. Even so, the revised instructions on the OVI (impaired) charge instructed the jury to sign the jury form consistent with its finding whether the "State proved beyond a reasonable doubt all essential elements of the offense of operating under the influence of alcohol and/or drugs of abuse." (June 1, 2023 Gen. Instructions at 7.) It is not clear which set of the written instructions were provided to the jury for use in deliberations.

### 1. Assignment of Error No. 1

{¶ 22} In his first assignment of error, Gooch argues that the trial court's references to drugs of abuse in the jury instructions, as an alternative means of committing the OVI offenses, denied him the right to a unanimous verdict, as the prosecution presented no evidence that Gooch had used or was under the influence of drugs of abuse at the time of the accident. The prosecution does not dispute that there is no evidence that Gooch had used or was under the influence of a drug of abuse; the prosecution's theory of the case throughout was that Gooch operated a vehicle while under the influence of alcohol and with a prohibited concentration of alcohol in his urine.

{¶ 23} Gooch did not object to the jury instructions at trial, and he has therefore forfeited all but plain error. *State v. Mankin*, 2020-Ohio-5317, ¶ 18 (10th Dist.). To establish plain error, Gooch must establish that the trial court deviated from a legal rule, that the deviation was obvious, and that the deviation affected substantial rights. *See State v. Petty*, 2012-Ohio-2989, ¶ 15 (10th Dist.), citing *State v. Zachery*, 2009-Ohio-1180, ¶ 8 (10th Dist.). An appellant asserting plain error bears the burden of "showing that but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice."[3] *State v. Quarterman*, 2014-Ohio-4034, ¶ 16.

{¶ 24} To satisfy the prejudice prong of a plain-error analysis, an appellant must demonstrate a *reasonable probability* that the plain or obvious error resulted in prejudice. *State v. Rogers*, 2015-Ohio-2459, ¶ 22, citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81-83 (2004); *State v. Thomas*, 2017-Ohio-8011, ¶ 33, citing *Rogers* at ¶ 22. The United States Supreme Court has held that, to establish plain error, the appellant must thus show "that the probability of a different result is 'sufficient to undermine confidence in the

---

[3] The Supreme Court of Ohio explained in *State v. Bond*, 2022-Ohio-4150, ¶ 7:

> The main distinction between plain-error review, which is the standard employed when a defendant failed to object at trial, and harmless-error review, which is employed when a defendant did object, is the party that bears the burden. *See State v. Jones*, 160 Ohio St.3d 314, 2020-Ohio-3051, 156 N.E.3d 872, ¶ 17-18. Under plain-error review, the defendant bears the burden to demonstrate the requirements for review whereas under harmless-error review, the state bears the burden to demonstrate that the error did not affect the defendant's substantial rights. *Id*. at ¶ 17, 18.

outcome' of the proceeding."[4] *Dominguez Benitez* at 83, quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984). *See also State v. Taylor-Hollingsworth*, 2020-Ohio-278, ¶ 12 (10th Dist.), citing *State v. Myers*, 2018-Ohio-1903, ¶ 130.

{¶ 25} An appellate court has discretion to notice plain error but "is not required to correct it." *Rogers* at ¶ 23.

{¶ 26} Gooch maintains in his first assignment of error that the references in the jury instructions to commission of OVI while under the influence of drugs of abuse, as opposed to alcohol, undermined his right to a unanimous verdict. In support of that argument, he relies primarily on *State v. Gardner*, 2008-Ohio-2787, and *State v. Rawson*, 2016-Ohio-1403 (10th Dist.).

{¶ 27} The appellant in *Gardner* appealed his conviction for aggravated burglary. To prove aggravated burglary, the state was required to prove that Gardner invaded the victim's dwelling for the purpose of committing a crime, or that he formed that intent during the trespass. On appeal, Gardner argued that the jury instructions had been erroneous, because they did not specify that the jury needed to unanimously agree on which underlying criminal offense Gardner intended to commit. The Supreme Court of Ohio rejected Gardner's appellate argument, holding, "Although Crim.R. 31(A) requires juror unanimity on each element of the crime, jurors need not agree to a single way by which an element is satisfied." *Gardner* at ¶ 38, citing *Richardson v. United States*, 526 U.S. 813, 817 (1999). It stated:

> " ' "In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged. Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative means. In reviewing an alternative means case, the court must determine whether a rational trier of fact could have

---

[4] We recognize that in *Petty* this court stated that under the plain-error standard, an appellate court will reverse a judgment based on an erroneous jury instruction only upon a showing that the outcome " ' "*clearly* would have been different absent the error." ' " (Emphasis added.) *Petty* at ¶ 15, quoting *Zachery* at ¶ 8, quoting *State v. Hill*, 2001-Ohio-141, ¶ 46. However, our subsequent analysis and rejection of the "clearly" standard in *Taylor-Hollingsworth*, 2020-Ohio-278, ¶ 12 (10th Dist.), and the Supreme Court of Ohio's recognition of the *Dominguez Benitez* standard, prompts us to call into question *Petty*'s continued validity as precedent. Accordingly, in considering whether prejudice resulted in this case, we are mindful that Gooch is not required to show that the outcome of the trial clearly would have been otherwise, but rather need only show that there is a reasonable probability that the error resulted in prejudice—such that there is a probability of a different result that is sufficient to undermine confidence in the outcome.

found each means of committing the crime proved beyond a
reasonable doubt." ' "

*Id.* at ¶ 49, quoting *State v. Jones*, 96 Haw. 161, 170 (2001), quoting *State v. Timley*, 255
Kan. 286, 289-290 (1994), quoting *State v. Kitchen*, 110 Wash.2d 403, 410 (1988).

{¶ 28} This court applied the rationale from *Gardner* in *Rawson*. There, the trial
court instructed the jury it could find Rawson guilty of violating R.C. 959.131(B) if it found
beyond a reasonable doubt that Rawson " 'did knowingly torture, torment, needlessly
mutilate or maim, cruelly beat, poison, needlessly kill, or commit an act of cruelty against a
companion animal.' " *Rawson* at ¶ 16. The trial court acknowledged the only alternative
means relevant to the crime, as charged and presented to the jury, was "cruelly beat," but it
nonetheless held it was appropriate to instruct the jury on all the alternative means set out
in R.C. 959.131(B). This court reversed the trial court's judgment. We stated, "[W]hile
Crim.R. 31(A) does not require jury unanimity as to the specific alternative means
supporting conviction, there must be sufficient evidence to support each charged
alternative means *upon which the jury was instructed*, so that 'a rational trier of fact could
have found each means of committing the crime proved beyond a reasonable doubt.' "
(Emphasis in original.) *Id.* at ¶ 17, quoting *Gardner* at ¶ 49.

{¶ 29} The evidence in *Rawson* was sufficient to support a conviction based on
Rawson having cruelly beaten his dog, but "instructing the jury on unsupported alternative
means [of committing the crime], no matter how implausible, violates" a defendant's
substantial right to a unanimous jury verdict under Crim.R. 31(A). *Id.* at ¶ 24. Under the
instructions erroneously given, one or more jurors might have concluded that Rawson did
not cruelly beat his dog but that he, instead, poisoned his dog—an alternative means for
which there was no evidence presented—and still have returned a verdict of guilty. It was
therefore impossible to discern whether the jury unanimously agreed that Rawson
committed an underlying act that was supported by evidence in the record. We noted the
Supreme Court of Ohio's rejection of the " 'dubious assumption of jur[y] infallibility' "—that
the " 'jury will always disregard an unproven theory and convict only on the proven
theory.' " *Id.* at ¶ 20, quoting *State v. Adams*, 2015-Ohio-3954, ¶ 291, citing *Griffin v.
United States*, 502 U.S. 46, 59. Additionally, we rejected the state's assertion that error in
the jury instructions was harmless, stating, "[T]he rationale of *Gardner* implies, or even

mandates, a presumption of prejudice that leaves little room for the application of a harmless error analysis." *Id.* at ¶ 24.

{¶ 30} We first address Gooch's unanimity argument as it applies to the OVI (per se) offense, and we find no plain error. First, R.C. 4511.19(A)(1)(i) is not an alternative-means offense. The statute plainly provides for a single means of violation: "No person shall operate any vehicle . . . within this state, if, at the time of the operation . . . [t]he person has a concentration of [.238] of one gram or more by weight of alcohol per [100] milliliters of the person's urine." R.C. 4511.19(A)(1)(i). The statute relates solely and specifically to alcohol, and the jury instructions properly focused the jury's attention on the concentration of alcohol in the urine sample. The trial court instructed:

> The State has accused the defendant of operating a motor vehicle with a prohibited alcohol concentration in his urine. A person commits the offense of operating a motor vehicle with a prohibited concentration of alcohol in his urine while he has a concentration of [.238] of one gram or more by weight of alcohol per [100 ml] of the defendant's urine.
>
> Before you can find the defendant guilty of operating a motor vehicle with a prohibited concentration of alcohol, the State's evidence must convince you beyond a reasonable doubt of each element of the offense.
>
> The elements are that the offense took place in Franklin County, Ohio; defendant was operating a motor vehicle; and the defendant had a concentration of .238 of one gram or more by weight of alcohol per [100 ml] of his urine. The parties have stipulated to a urine sample test result of .243.
>
> If you find that the State proved beyond a reasonable doubt all essential elements of the offense of operating under the influence of alcohol per se, your verdict must be guilty.

(Tr. Vol. II at 275-276.) The sole reference to drugs of abuse in the OVI (per se) instruction occurs in the final sentence:

> If you find the State failed to prove beyond a reasonable doubt all essential elements of the offense of operating under the influence of alcohol and/or drugs of abuse per se, then your verdict must be not guilty according to your findings.

*Id.* at 276.

{¶ 31} The single reference to drugs of abuse in the final sentence of the jury instructions regarding OVI (per se) does not create a question about jury unanimity, did not affect substantial rights, and does not amount to plain error. The trial court correctly instructed the jury of the elements it was required to find beyond a reasonable doubt to return a guilty verdict for OVI (per se) under R.C. 4511.19(A)(1)(i). It informed the jury that, to return a guilty verdict, it had to find that the state established beyond a reasonable doubt that Gooch "had a concentration of .238 of one gram or more by weight *of alcohol* per [100 ml] of his urine." (Emphasis added.) (Gen. Instructions at 8.) It further told the jury that the parties had stipulated to a urine sample test result of .243 of one gram by weight *of alcohol* per 100 ml of urine. *Id*. R.C. 4511.19(A)(1)(i) is violated only by operating a vehicle with a prohibited concentration of alcohol in the operator's urine, just as the trial court instructed the jury. Even the final sentence of the jury instruction, with the extraneous reference to drugs of abuse, referred to the elements of the offense, which the trial court had just described by reference solely to alcohol.

{¶ 32} We cannot conclude there is a reasonable probability that the error resulted in prejudice—such that there is a probability of a different result that is sufficient to undermine confidence in the outcome. Accordingly, we overrule Gooch's first assignment of error as it relates to the OVI (per se) offense.

{¶ 33} We now consider Gooch's first assignment of error as it pertains to the OVI (impaired) charge under R.C. 4511.19(A)(1)(a). Like the offense at issue in *Rawson*, R.C. 4511.19(A)(1)(a) defines an alternate-means offense. A person can violate R.C. 4511.19(A)(1)(a) by operating a vehicle while (1) under the influence of alcohol, (2) under the influence of a drug of abuse, or (3) under the influence of a combination of alcohol and a drug of abuse.

{¶ 34} The trial court informed the jury, "The defendant is charged with operating a vehicle while under the influence of alcohol or drugs of abuse" but, in defining the elements of the offense, stated, "[B]efore you can find the defendant guilty, you must find beyond a reasonable doubt that . . . the defendant operated a vehicle under the influence *of alcohol*." (Emphasis added.) (Tr. at 273.) Then, despite having limited its discussion of the elements of the offense to impairment because of alcohol, the trial court defined "drugs of abuse" for the jury and stated that the jury could use the evidence of the urine test, "along with all other evidence in determining whether the defendant was or was not under the influence

of alcohol *or drugs of abuse*." (Emphasis added.) *Id.* at 275. The trial court instructed the jury to execute the appropriate jury form based on the determination whether the state "proved beyond a reasonable doubt all essential elements of the offense of operating [a vehicle] under the influence of alcohol *and/or drugs of abuse*." (Emphasis added.) *Id.* Applying the analysis set out in *Gardner* and *Rawson*, we conclude the jury instructions on the OVI (impaired) offense were erroneous to the extent they implied to the jury that it could find Gooch guilty of violating R.C. 4511.19(A)(1)(a) by operating a motor vehicle while under the influence of drugs of abuse, when the state presented no evidence that Gooch was under the influence of drugs of abuse, thus creating the potential for a non-unanimous verdict.

{¶ 35} In response to Gooch's unanimity argument, the state cites *Columbus v. Dials*, 2005-Ohio-6305, ¶ 69 (10th Dist.), in which the appellant argued that his conviction for violating a Columbus ordinance that is analogous to R.C. 4511.19(A)(1)(a) was not supported by sufficient evidence and that the trial court erred by denying his Crim.R. 29(A) motion for acquittal because the city presented no evidence that the appellant was operating a vehicle under the influence of a drug of abuse. This court held, "In [a] criminal prosecution based upon a law that includes a disjunctive set of elements, the government is merely required to prove at trial one of the elements beyond a reasonable doubt." *Id.* Because the evidence in *Dials* was sufficient to support the conviction for operating a vehicle while under the influence of alcohol, we held the trial court did not err by overruling the appellant's Crim.R. 29(A) motion to acquit. *Dials* is of limited value here, however, because it did not involve a challenge to jury instructions or jury unanimity. Under his first assignment of error, Gooch argues not that there was insufficient evidence that he was operating a vehicle while under the influence of alcohol, but that it is impossible to discern whether the jury unanimously found that fact beyond a reasonable doubt, because of the extraneous references to the disjunctive, alternate means of violating R.C. 4511.19(A)(1)(a) by operating a vehicle while under the influence of drugs of abuse in the jury instructions.

{¶ 36} As previously stated, to establish plain error, Gooch must not only establish a plain or obvious deviation from a legal rule but also must establish that the deviation affected substantial rights. *See Petty*, 2012-Ohio-2989, at ¶ 15 (10th Dist.). We agree with Gooch that the trial court's references to operating a vehicle while under the influence of drugs of abuse and its definition of "drugs of abuse" in the jury instruction were obviously

erroneous based on the evidence presented and the prosecution's theory of the case, which focused exclusively on alcohol. Prior to the case being submitted to the jury, prosecutors even asked the trial court to remove references to drugs of abuse from the written jury instructions, which the court agreed to do. Yet the trial court did not offer any curative instructions to the jury regarding the erroneous inclusion of references to drugs of abuse in the oral instructions already given. Furthermore, even the revised copy of the written jury instructions, which removed some references to drugs of abuse, retained other references to drugs of abuse.

{¶ 37} Having concluded that the trial court committed an obvious error in its jury instructions regarding the OVI (impaired) offense, we now consider whether the error violated a substantial right and whether reversal is necessary to correct a manifest miscarriage of justice.

{¶ 38} We have held that "no conviction may stand on a non-unanimous verdict because a defendant has a 'substantial right to a unanimous jury verdict.' " *State v. Pippins*, 2020-Ohio-503, ¶ 29 (10th Dist.), quoting *Rawson*, 2016-Ohio-1403, at ¶ 24 (10th Dist.). A unanimity error is thus a " 'defect[] affecting substantial rights.' " (Brackets in original.) *Id.*, quoting Crim.R. 52(B). "[I]n other words, a unanimity error always affects the outcome." *Id.*, citing *Rawson* at ¶ 23-24, and *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992). Although the state argues that any unanimity error brought about by the references to drugs of abuse in the OVI (impaired) instruction was harmless, we rejected a similar argument in *Rawson*. We noted that *Gardner* involved a scenario in which there was "so little evidence adduced on alternative means that there was no risk of mistake on the part of the jury, yet the jury instructions [were] still [] in error for including the unsubstantiated alternative means." *Rawson* at ¶ 24. We held, "Because *Gardner* expressly states that the defendant has a substantial right to a unanimous jury verdict under Crim.R. 31(A), and instructing the jury on unsupported alternative means, no matter how implausible, violates that right, we cannot find harmless error in this case while complying with *Gardner*." *Id.*

{¶ 39} We nevertheless conclude that reversal for plain error is not required in this case. Establishing plain error does not necessarily warrant granting relief; "correcting a plain error may be done only in 'exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *State v. Bond*, 2022-Ohio-4150, ¶ 18, quoting *State v. Long*, 53

Ohio St.2d 91 (1978), paragraph three of the syllabus. Here, reversal is not required to prevent a manifest miscarriage of justice.

{¶ 40} Although the jury found Gooch guilty of both OVI (impaired) and OVI (per se), the trial court merged the OVI (impaired) offense with the OVI (per se) offense as allied offenses of similar import and imposed a sentence only on the latter.[5] R.C. 2941.25(A), which codifies "the constitutional protections against double jeopardy," prohibits multiple convictions for allied offenses of similar import. *State v. Whitfield*, 2010-Ohio-2, ¶ 7. A defendant may be indicted, tried, and found guilty of multiple allied offenses of similar import, but R.C. 2941.25(A) prohibits a court from sentencing the defendant on more than one of those offenses. *State v. Hike*, 1999 Ohio App. LEXIS 2996, *7 (10th Dist. June 29, 1999). For purposes of R.C. 2941.25(A), "a 'conviction' consists of a guilty verdict *and* the imposition of a sentence or penalty." (Emphasis in original.) *Whitfield* at ¶ 12. Because the trial court did not sentence Gooch on the OVI (impaired) offense, he has not been convicted of that offense.

{¶ 41} *State v. Allen*, 2013-Ohio-513, ¶ 8 (10th Dist.) presented an analogous situation. There, the appellant was found guilty of engaging in a pattern of corrupt activity and participation in a criminal gang, but the trial court merged those offenses and sentenced the appellant only for the criminal gang offense. We explained, "[D]espite the jury's verdict that appellant was guilty of the corrupt activity offense, . . . the trial court entered a judgment of conviction . . ., including a sentence, only for the offense of criminal gang participation . . ." *Id.* at ¶ 3. When the appellant challenged the trial court's jury instructions on the corrupt activity charge, this court declined to decide whether the court's instruction on the corrupt activity charge constituted plain error, "because appellant was not 'convicted' of that offense." *Id.* at ¶ 8. Although *Allen* suggests that this court need not determine whether the trial court's jury instructions constituted plain error, we determine on the merits that, while there was an obvious error in the trial court's jury instructions regarding the OVI (impaired) offense, we need not reverse because this is not the

---

[5] There is no dispute that the trial court was required to and did appropriately merge the OVI offenses as allied offenses of similar import. *See, e.g.*, *Columbus v. Aleshire*, 2010-Ohio-2773, ¶ 63 (10th Dist.) (OVI (impaired) offense and OVI (per se) offense should have been merged for sentencing, and appellant should have been sentenced on only one); *State v. Sims*, 2023-Ohio-4711, ¶ 32 (1st Dist.), *rev'd on other grounds*, 2024-Ohio-5175 (reversing and remanding for sentencing on one, but not both, OVI counts); *State v. Louis*, 2017-Ohio-8666, ¶ 24 (2d Dist.) ("three OVI offenses were properly merged as allied offenses . . . into one conviction").

extraordinary case where correction of plain error is necessary to prevent a manifest miscarriage of justice. The guilty verdict on the OVI (impaired) offense did not affect Gooch's sentence because the trial court sentenced Gooch only for OVI (per se).

{¶ 42} In urging us to reverse his conviction for OVI (impaired), Gooch argues that, even without a sentence, the finding of guilt on the OVI (impaired) offense remains and could be considered in a future criminal proceeding as a prior conviction, to increase the degree of an offense or punishment. In support of that argument, he cites *Columbus v. D'Andrea*, 2011-Ohio-6132 (10th Dist.), in which this court relied on caselaw from the Ninth District Court of Appeals that suggested, "to prove a prior conviction" for such purposes, the prosecution "need only prove that the offender has a previous determination of guilt," and not that the offender was sentenced upon that determination. *Id*. at ¶ 14. However, the Supreme Court of Ohio has since rejected that argument in *State v. Gwen*, 2012-Ohio-5046. The statute at issue in *Gwen*, R.C. 2919.25(D)(4), required the state to prove that a defendant "previously has pleaded guilty to or been convicted of two or more offenses of domestic violence" before subjecting the defendant to a penalty for an increased degree of domestic violence. R.C. 2919.25(D)(4). The Supreme Court stated, "When the state chooses to prove a prior offense not through a guilty plea, but via a conviction, and the defendant does not stipulate to the fact of the conviction, the judgment entry of conviction offered must contain the four elements described in Crim.R. 32(C) and in *State v. Lester*, 130 Ohio St.3d 303, 2011 Ohio 5204, 958 N.E.2d 142, paragraph one of the syllabus. A finding of guilt is not enough." *Gwen* at ¶ 19. The Supreme Court rejected "the Ninth District's acceptance of the argument that the word 'convicted' refers only to a determination of guilt and not a judgment of conviction." *Id*. at ¶ 20. Based on *Gwen*, we reject Gooch's argument that immediate review is necessary to protect him from facing harsher penalties or higher-degree offenses in future criminal proceedings, based on the unsentenced finding of guilt on the OVI (impaired) offense here.

{¶ 43} For these reasons, we overrule Gooch's first assignment of error.

### 2. Assignment of Error No. 2

{¶ 44} In his second assignment of error, Gooch argues that the trial court erred by not defining for the jury, as part of the jury instructions for the OVI (impaired) charge, the phrase "under the influence of alcohol," an essential element of a violation of R.C.

4511.19(A)(1)(a).[6] Gooch did not object to the trial court's jury instructions and has, thus, again forfeited all but plain error. *See Mankin*, 2020-Ohio-5317, at ¶ 18.

{¶ 45} The state bears the burden in a criminal prosecution of establishing all material elements of a crime by proof beyond a reasonable doubt. *State v. Adams*, 62 Ohio St.2d 151, 153 (1980), citing *Mullaney v. Wilbur*, 421 U.S. 684 (1975). And "[t]he constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged." *United States v. Gaudin*, 515 U.S. 506, 511 (1995). Generally, "a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged." *Adams* at 153. However, "a trial court's failure to separately and specifically charge the jury on every element of each crime with which a defendant is charged does not *per se* constitute plain error nor does it necessarily require reversal of a conviction." *Id.* at 154. An appellate court must review the record in each case to assess the probable impact of such a failure and to decide whether the defendant has been substantially prejudiced, resulting in a manifest miscarriage of justice. *Id.*

{¶ 46} The Sixth District Court of Appeals has held that a jury instruction that defined "under the influence" in a way that did not inform the jury that the law requires the defendant be affected to an appreciable degree in the operation of a motor vehicle was erroneous as a matter of law. *State v. Biggert*, 1998 Ohio App. LEXIS 2234, *8 (6th Dist. May 22, 1998), citing *Toledo v. Starks*, 25 Ohio App.2d 162, 166 (6th Dist. 1971). Yet the Sixth District did not hold that such an error must be corrected as a matter of law under a plain-error analysis.

{¶ 47} The state concedes "the trial court did not define 'under the influence of alcohol,' that the same is an essential element of R.C. §4511.19(A)(1)(a), and that it is plain error to fail to instruct the jury on essential elements." (Appellee's Brief at 16.) But the state also argued during oral argument that this court need not remand for a new trial on

---

[6] In addition to his argument that the trial court erred by omitting a jury instruction defining the phrase "under the influence of alcohol," Gooch also argues under his second assignment of error that Officer Fullerton offered improper opinion testimony that Gooch was impaired. Even if Gooch could raise this issue without a separate assignment of error concerning the admission of that testimony, Gooch forfeited all but plain error because he did not object to that testimony at trial. *See State v. Sims*, 2016-Ohio-4763, ¶ 9 (10th Dist.). Gooch has not argued that the admission of Officer Fullerton's testimony was plain error, so we do not address that argument further.

the OVI (impaired) offense if this court affirms the judgment on the OVI (per se) charge in case No. 2023 TRC 115175.

{¶ 48} For the reasons we have stated with respect to Gooch's first assignment of error, we conclude that reversal of the jury's finding of guilt on the OVI (impaired) offense is not required to prevent a manifest miscarriage of justice, as the jury also found Gooch guilty of the OVI (per se) offense in violation of R.C. 4511.19(A)(1)(i), based on the result of his urine sample, and it was the OVI (per se) offense for which the trial court convicted and sentenced Gooch.  Accordingly, we overrule Gooch's second assignment of error.

**B.  Assignments of Error Nos. 3 and 4**

{¶ 49} In his third and fourth assignments of error, Gooch argues that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence.

{¶ 50} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different," and they require different analyses. *State v. Thompkins*, 1997-Ohio-52, 78 Ohio St.3d 380, paragraph two of the syllabus. Sufficiency is a question of law that asks whether the state's evidence passes a "test of adequacy." *Id.* at 386.  In assessing the sufficiency of the evidence, an appellate court asks " 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *State v. Worley*, 2021-Ohio-2207, ¶ 57, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds*, as stated in *State v. Smith*, 80 Ohio St.3d 89, 102, fn. 4 (1997).  An appellate court will not reverse a judgment on sufficiency grounds "unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.' " *State v. Ketterer*, 2006-Ohio-5283, ¶ 94, quoting *State v. Dennis*, 1997-Ohio-372, ¶ 51.  We review a challenge to the sufficiency of the evidence de novo.  *State v. Bertram*, 2023-Ohio-1456, ¶ 8, citing *State v. Dent*, 2020-Ohio-6670, ¶ 15.

{¶ 51} A verdict may be against the manifest weight of the evidence, even though there was legally sufficient evidence to support it. *State v. Robinson*, 162 Ohio St. 486, 487 (1955).  "To evaluate a claim that a jury verdict is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the

evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *State v. Wilks*, 2018-Ohio-1562, ¶ 168, citing *Thompkins* at 387. Reversal on manifest weight grounds is appropriate " 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 52} When viewed in the light most favorable to the prosecution, the evidence presented at trial was sufficient for a rational trier of fact to have found the essential elements of the OVI charges beyond a reasonable doubt. Officer Stephen observed vomit on Gooch's shoulder and both inside and outside of Gooch's vehicle; he noted that there was a strong odor of alcohol coming from the vomit. Gooch admitted that he vomited immediately after the accident, both inside his vehicle and while sticking his head out the window. Both Officer Stephen and Officer Fullerton testified that the splatter of the vomit on the rear passenger door was consistent with a driver vomiting out the window while the vehicle was moving. Officer Fullerton testified that he noticed an odor of alcohol coming from Gooch after he placed Gooch in the back of his police cruiser. He further testified that Gooch was disoriented as to the direction he had been driving, had thick and slurred speech, and was lethargic. He testified that Gooch displayed numerous indicators of impairment while performing field-sobriety tests. Finally, he testified that Gooch provided a urine sample, which was tested and determined to contain ".243 grams of weight of alcohol per 100 milliliters" of urine, above the prohibited concentration. (Tr. Vol. I at 191.) Gooch stipulated to that test result, while denying it was his urine. Gooch conceded, however, that the BMV 2255 form he signed before his release from custody indicated that he had submitted to a urine test. From this evidence, a reasonable trier of fact could have concluded that the state proved beyond a reasonable doubt that Gooch operated a vehicle while under the influence of alcohol and that Gooch operated a vehicle with a concentration of .238 of one gram or more by weight of alcohol per 100 milliliters of his urine.

{¶ 53} Similarly, the jury's verdicts were not against the manifest weight of the evidence. Although Gooch denied having consumed alcohol prior to the accident, claimed the noted impairment factors and vomiting were the result of the accident, not of alcohol consumption, and denied having provided a urine sample, the jury was not required to accept Gooch's version of the facts. Indeed, a jury "is free to believe or disbelieve all or any

of the testimony." *In re B.O.J.*, 2010-Ohio-791, ¶ 8 (10th Dist.), citing *State v. Jackson*, 2002 Ohio App. LEXIS 1230, *7 (10th Dist. 2002).

{¶ 54} A conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution's testimony. *State v. Chandler*, 2006-Ohio-2070, ¶ 13 (10th Dist.), citing *State v. Moore*, 2004-Ohio-3398, ¶ 52 (2d Dist.). The "weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 230 (1967). This court must " 'bear in mind the trier of fact's superior, first-hand perspective in judging the demeanor and credibility of witnesses.' " *State v. Harris*, 2014-Ohio-2501, ¶ 25 (10th Dist.), quoting *State v. Mickens*, 2009-Ohio-1973, ¶ 30 (10th Dist.). Indeed, an appellate court considering a manifest-weight argument must "give great deference to the trier of fact's determination on the credibility of the witnesses." *State v. Favor*, 2008-Ohio-5371, ¶ 10 (10th Dist.), citing *State v. Covington*, 2002-Ohio-7037, ¶ 28 (10th Dist.). Here, the jury clearly believed the officers' testimony, including Officer Fullerton's testimony that Gooch provided a urine sample, which demonstrated a prohibited concentration of alcohol in his urine. Because the jury was in the best position to determine the credibility of the witnesses, taking into account each witness's manner and demeanor, we cannot conclude that this case presents a scenario in which the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

{¶ 55} For these reasons, we overrule Gooch's third and fourth assignments of error.

IV. **CONCLUSION**

{¶ 56} Having overruled each of Gooch's four assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and LELAND, JJ., concur.

———————————